IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| HANNA ELAINE ZALK-SMITH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:20-cv-362-KPJ |
| | § | |
| KILOLO KIJAKAZI,[1] | § | |
| *Acting Commissioner of Social Security*, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Hanna Elaine Zalk-Smith ("Ms. Zalk-Smith") brings this appeal under 42 U.S.C. § 405(g) for judicial review of a partially favorable final decision of the Commissioner of Social Security ("the Commissioner"). Having considered the briefs submitted by the parties and the administrative record, the Court will **REVERSE** and **REMAND** the Commissioner's final decision for further proceedings.

## I.    APPLICABLE LAW

### A.    Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021, and is automatically substituted as the defendant in this action. Fed. R. Civ. P. 25(d).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) the impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; or (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. § 404.1520(a)(4)(i)–(iv); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016) ("The burden of proof is on the claimant for the first four steps but shifts to the agency at step five; a finding at any step that a claimant is or is not disabled ends the analysis.").

### B.  Standard of Review

The standard of review in a social security appeal is whether the Commissioner's final decision[3] "is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling*, 36 F.3d at 434 (quoting *Villa*, 895 F.2d at 1021). If substantial evidence supports the Commissioner's findings and the correct legal

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

[3] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 416.1481, as it is in this case.

standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pena v. Saul*, 846 F. App'x 308, 309 (5th Cir. 2021) (internal quotation marks omitted) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "[I]t must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Bailey v. Saul*, 853 F. App'x 934, 935 (5th Cir. 2021) (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)). The Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling*, 36 F.3d at 434 (quoting *Harrell*, 862 F.2d at 475). Rather, evidentiary conflicts are for the Commissioner to decide, and "if a decision is supported by substantial evidence, it must be affirmed even if there is contrary evidence." *Bailey*, 853 F. App'x at 935 (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)). However, the Court must do more than "rubber stamp" the decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner's] findings." *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

## II. BACKGROUND AND PROCEDURAL HISTORY

Ms. Zalk-Smith was born in 1964, completed high school, and worked as a restaurant general manager, bakery crew member, and retail store employee.[4] *See* Tr. 40–42, 222. On August 20, 2017, Ms. Zalk-Smith filed an application for Disability Insurance Benefits ("DIB"), alleging disability since May 6, 2017, due to "chemo brain," migraine headaches, carpal tunnel syndrome in both hands, knee and foot pain, and arthritis in neck, jaw, and hands. *See* Tr. 59–60, 167–68. The Social Security Administration ("SSA") denied Ms. Zalk-Smith's claim initially on October 26, 2017, and upon reconsideration on March 23, 2018. *See* Tr. 98–107. Thereafter, Ms. Zalk-Smith filed a written request for a hearing. *See* Tr. 108–09. On April 8, 2019, Administrative Law Judge Daniel Curran (the "ALJ") held a hearing. *See* Tr. 33–58. The hearing was attended by Ms. Zalk-Smith, her attorney, and a vocational expert. *See* Tr. 33.

On May 1, 2019, the ALJ issued a partially favorable decision. *See* Tr. 7–25. In his decision, the ALJ found that Ms. Zalk-Smith met the insured status requirements of the Social Security Act (the "Act") through December 31, 2021. *See* Tr. 13. At step one, the ALJ found that Ms. Zalk-Smith had not engaged in substantial gainful activity since May 6, 2017, her alleged onset date. *Id.* At step two, the ALJ found that Ms. Zalk-Smith had the following severe impairments: a mood disorder, status post mastectomy and chemotherapy sequelae, disorder of the spine, lung disease, and dysfunction of major joints. *See* Tr. 13–16. At step three, the ALJ found that none of Ms. Zalk-Smith's impairments, alone or in combination, met or medically equaled a Listing. *See* Tr. 16–18. Because the ALJ found that none of the impairments met a Listing, the

---

[4] Documents 11-1 through 11-19 comprise the Administrative Record ("Tr."). When citing to the record, the Court cites to the Tr.'s internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

ALJ assessed Ms. Zalk-Smith's RFC. *See* Tr. 18–22. The ALJ found Ms. Zalk-Smith had the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) except the claimant is limited to occasionally overhead reaching. The claimant cannot climb ladders, scaffolds or ropes, but can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant can understand, remember, and carry out only simple instructions, can make simple work-related decisions, can respond appropriately to supervision, co-workers, and usual work situations, and can deal with changes in a routine work setting. The claimant can perform activities that do not exceed three steps, and must not have work that requires joint decision-making or teamwork. Interactions on the job with other people and the public must be of a superficial nature. The claimant must avoid exposure to unguarded hazards, uneven walking surfaces, open nip points, unprotected heights, moving machinery, open pits, open flames, and open pools of water. The claimant is limited to occasional exposure to extremes of temperature, loud noises, smoke, flashing lights, or other intrusive environmental distractions.

*See* Tr. 18–19. At step four, the ALJ concluded that Ms. Zalk-Smith was unable to perform her past relevant work. *See* Tr. 22. At step five, the ALJ found that, prior to April 8, 2019, Ms. Zalk-Smith was classified as an "individual closely approaching advanced age," and could perform jobs that existed in significant numbers in the national economy such as cafeteria attendant and silver wrapper. *See* Tr. 22–24. On April 8, 2019, Ms. Zalk-Smith's age category changed to "an individual of advanced age." *See* Tr. 22. The ALJ applied Medical-Vocational Rule 202.06[5] to find Ms. Zalk-Smith disabled beginning on that date. *See* Tr. 24. The ALJ concluded that Ms. Zalk-Smith "was not disabled prior to April 8, 2019, but became disabled on that date and has continued to be disabled through the date of the [ALJ's] decision." *Id*.

Ms. Zalk-Smith requested that the Appeals Council review the ALJ's partially favorable decision. *See* Tr. 1, 297–305. On February 5, 2020, the Appeals Council denied the request for review. *See* Tr. 1–3. Therefore, the ALJ's decision became the Commissioner's final decision. *See*

---

[5] *See* 20 C.F.R. pt. 404, subpt. P, app. 2.

*Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); 42 U.S.C. § 405(g). Ms. Zalk-Smith filed her appeal to this Court on April 30, 2020. *See* Dkt. 1.

### III. ANALYSIS

Ms. Zalk-Smith argues on appeal that the ALJ failed to properly evaluate her carpal tunnel syndrome ("CTS") impairment. She specifically contends the ALJ erred at step two by failing to find that CTS was a severe impairment. *See* Dkt. 13 at 9. She further argues the ALJ erred in formulating her RFC by failing to account for the limiting effects of her CTS impairment. *Id*. at 10–12. In response, the Commissioner argues that the ALJ properly considered CTS throughout the sequential evaluation process, including at step two and the RFC determination. *See* Dkt. 14 at 6–9.

At step two, the ALJ must consider whether any of the claimant's impairments are severe. *See* 20 C.F.R. § 404.1520(a)(4)(ii). In *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), the Fifth Circuit described the threshold for a severe impairment.

> Phrased in the negative, an 'impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.'

*See Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (quoting *Stone*, 752 F.2d at 1101). "Re-stated, an impairment is severe if it is anything more than a slight abnormality that would not be expected to interfere with a claimant's ability to work. Th[e] second step [of the sequential evaluation process] requires the claimant to make a *de minimis* showing." *See Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (internal quotation marks and citation omitted). "ALJs are bound not just to use [the *Stone*] standard but also to cite it (or to an equivalent authority) in their written decisions; we presume that an ALJ applied the wrong severity standard if it does not." *See Keel*, 986 F.3d at 555 (citing *Stone*, 752 F.2d at 1106).

If the Court finds that a *Stone* error occurred, the Court must reverse and remand if the ALJ did not proceed past step two of the sequential evaluation process. *See Rollins v. Berryhill*, No. 7:17-cv-136, 2018 WL 2064781, at *5 (N.D. Tex. May 2, 2018) ("Automatic remand is only required in cases where the ALJ used the incorrect standard and did not proceed past step two."). If, however, the ALJ found at least one severe impairment at step two and proceeded to later steps of the sequential evaluation process, the Court applies harmless error review. *See Keel*, 986 F.3d at 556 (explaining that even if the Court "were to conclude that the ALJ failed to properly apply the *Stone* standard, such a conclusion does not require an automatic reversal—if the ALJ proceed[ed] past step two, we consider whether the error was harmless"); *see also Connie G. v. Berryhill*, No. 3:17-cv-3342, 2019 WL 1294441, at *4 (N.D. Tex. Mar. 21, 2019) ("[H]armless error analysis is appropriate in deciding whether the ALJ's *Stone* error requires remand only in cases where the ALJ proceeds past step two in the sequential evaluation."); *Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987) (holding appellant's argument that the ALJ erred in failing to find her back problems severe was not grounds for a remand because the case did not implicate the "non-severity" of plaintiff's condition since the ALJ continued through step four of the sequential analysis); *Jones v. Bowen*, 829 F.2d 524, 527 n.1 (5th Cir. 1987) (holding no *Stone* error where the ALJ properly found the claimant's hypertension was mild and proceeded through step five, rather than denying benefits "prematurely . . . based on an improper determination of 'non-severity'"); *Herrera v. Astrue*, 406 F. App'x 899, 903 (5th Cir. 2010) (same). "Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err." *Keel*, 986 F.3d at 556.

Here, the ALJ did not cite *Stone* in his step two analysis. Although the ALJ discussed Ms. Zalk-Smith's CTS impairment in his step two analysis, he did not explicitly state whether it was a

severe impairment. The ALJ concluded that Ms. Zalk-Smith had the following severe impairments: a mood disorder, status post mastectomy and chemotherapy sequelae, disorder of the spine, lung disease, and dysfunction of major joints. *See* Tr. 13–16. Ms. Zalk-Smith contends the ALJ should have specified that her CTS was a severe impairment. The Commissioner disagrees, arguing that the ALJ *did* find CTS to be a severe impairment because he included "CTS when he listed 'dysfunction of major joints'" as a severe impairment. *See* Dkt. 14 at 6. Ms. Zalk-Smith disputes the Commissioner's representation and contends that CTS is not a joint disorder, but rather, a neurological disorder. *See* Dkt. 13 at 10 n.5.

The Court need not determine whether the ALJ erred at step two because the ALJ found at least one severe impairment and proceeded to later steps in the sequential evaluation process. The Court therefore applies harmless error review. In so doing, the Court considers whether the ALJ addressed the impact of Ms. Zalk-Smith's non-severe impairments, either singly or in combination with other conditions, at later steps of the sequential evaluation process, including in particular when the ALJ formulated Ms. Zalk-Smith's RFC. *See Williams v. Astrue*, No. 3:09-cv-103, 2010 WL 517590, at *8 (N.D. Tex. Feb. 11, 2010); *Milton L. C. v. Saul*, No. 1:20-cv-113, 2021 WL 3518532, at *10 (N.D. Tex. July 23, 2021), *report and recommendation adopted*, 2021 WL 3516244 (N.D. Tex. Aug. 10, 2021) ("[H]ere, the ALJ did reference all of Plaintiff's alleged impairments, as well as Plaintiff's additional symptoms, in the RFC discussion. Thus, even assuming the ALJ made an error in the step two severity discussion, there is no ground for reversal because the ALJ proceeded beyond step two in the sequential analysis in discussing all of Plaintiff's impairments.") (internal citation and quotation marks omitted); *Corbezzolo v. Wiley*, No. 4:20-cv-2150, 2021 WL 2673077, at *5 (S.D. Tex. June 29, 2021) ("[T]he question is whether [the] ALJ could have reached a different conclusion. Here, because the ALJ considered all of

8

Plaintiff's impairments, severe and non-severe, in formulating the Plaintiff's RFC[,] any step two error was harmless.").

The Commissioner argues that any error at step two is "irrelevant," and essentially harmless, because the "ALJ proceeded through the steps of the sequential evaluation process, considering [Ms. Zalk-Smith's] CTS at step three and in formulating her RFC." *See* Dkt. 14 at 6. Ms. Zalk-Smith disputes the Commissioner's characterization of the RFC assessment; she counters that the ALJ failed to consider the limiting effects of her CTS impairment when he formulated her RFC. *See* Dkt. 13 at 10–12. Ms. Zalk-Smith essentially contends that she has functional limitations arising from her CTS impairment that the ALJ failed to account for in her RFC. *See id.* at 12 ("Even after step two, the written decision fails to recognize any functional limitations in handling, fingering, feeling, repetitive wrist motions, or indeed any limitations from CTS.").

When determining a claimant's RFC, the ALJ is required to "consider the limiting effects of all [the claimant's] impairment(s), even those that are not severe." 20 C.F.R. § 404.1545(e). This is because symptoms from other impairments "may cause a limitation of function beyond that which can be determined on the basis of the anatomical, physiological or psychological abnormalities considered alone[.]" *Id*. In assessing the total limiting effects of an impairment, the ALJ was required to consider all of the evidence, including the objective medical evidence, Ms. Zalk-Smith's activities of daily living, precipitating and aggravating factors, and treatment received for an impairment. *Id.*; *see also* 20 C.F.R. § 404.1529(c).

The Court agrees with Ms. Zalk-Smith that the ALJ committed harmful error by failing to adequately consider Ms. Zalk-Smith's alleged functional limitations related to her CTS impairment when the ALJ formulated the RFC. In the RFC discussion, the ALJ noted that Ms. Zalk-Smith had "moderate to severe bilateral carpal tunnel syndrome" for which she underwent

9

multiple surgeries. *See* Tr. 21. Beyond this statement, however, the ALJ's RFC discussion did not specifically address the extensive objective medical evidence in the record chronicling Ms. Zalk-Smith's history of CTS, the treatment she received, or any functional limitations that her treating providers may have found she had due to CTS. *See, e.g.*, Tr. 451–640; Tr. 603 (attending physician statement Dr. Gayle Voth, M.D., completed for Ms. Zalk-Smith's employer, wherein Dr. Voth opined that Ms. Zalk-Smith had limitations in "grip, lifting, repetitive hand use, routine ADL [activities of daily living], cooking, cleaning, writing, driving, grooming & dressing"). The ALJ also failed to address Ms. Zalk-Smith's testimony at the hearing regarding her specific functional limitations due to CTS. *See* Tr. 44 (testifying that she still had pain following her most recent surgery for CTS and that she had lost all of her grip strength); *see also* Tr. 44–45 (testifying that due to CTS, she is unable to open a jar or a water bottle and cannot button, zip zippers, or tie laces, and can only type for up to five minutes at a time). Although the ALJ stated that Ms. Zalk-Smith's "allegations concerning [her] impairments and the impact on her ability to work are not sufficiently supported by the record as a whole in light of the objective medical findings," *see* Tr. 20, the ALJ did not identify the objective medical evidence that he relied on in finding her testimony regarding functional limitations due to CTS not entirely credible.

In terms of the RFC itself, the ALJ ultimately concluded that Ms. Zalk-Smith was limited to "light work," *see* Tr. 21, but did not include any handling or manipulative limitations in Ms. Zalk-Smith's RFC.[6] Critically, the ALJ gave no explanation for why such limitations were not necessary. On appeal, the Commissioner points to medical evidence in the record that may support the ALJ's decision to omit hand-related functional limitations from the RFC. *See* Tr. 14 at 7. The Commissioner, however, overlooks the fact that the ALJ did not provide these reasons in his RFC

---

[6] Although the ALJ included a "reaching overhead" restriction in the RFC, the ALJ did so on account of Ms. Zalk-Smith's "cervicalgia with radiculopathy to the shoulders," and not the CTS impairment. *See* Tr. 21.

analysis. It is not the role of the Court, or the parties on appeal, to hunt for record citations supporting the ALJ's RFC findings when the ALJ did not engage in the necessary analysis. *See Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (emphasizing that the "ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision"). Because the ALJ did not offer any justification for his omission of handling and manipulative limitations from the RFC, the Court cannot say whether his failure to do so was an oversight, as Ms. Zalk-Smith argues on appeal, or was supported by the medical evidence in the record, as the Commissioner maintains.

In sum, the ALJ's failure to properly consider Ms. Zalk-Smith's CTS impairment when formulating her RFC constitutes clear legal error. This error, in turn, impacted later steps in the sequential evaluation process: at step five, for example, the ALJ did not include any handling or manipulative limitations in the hypothetical posed to the vocational expert. *See* Tr. 53–55. Nor did the ALJ consider the vocational expert's testimony, in response to a hypothetical from Ms. Zalk-Smith's attorney, that an individual with hand problems would not be able to perform the two jobs identified by the vocational expert—cafeteria attendant and silver wrapper.[7] *See* Tr. 55–56.

The Court must, therefore, remand this case for further administrative analysis to determine the effect, if any, that Ms. Zalk-Smith's CTS had on her RFC. *See Milton L. C.*, 2021 WL 3518532, at *10 (emphasizing that even where an impairment is found to be non-severe at step two, the "ALJ must still consider the impact of [any] non-severe impairments—either singly or in combination

---

[7] The VE specifically testified that:

> Q. All right, let me ask you, with regard to these two jobs, if the hypothetical individual was found to have significant deficits related to persisting in work related activities, at a reasonable pace, due to fatigue, pain, *problems with the hands*, problems being forgetful, easily sidetracked, easily overwhelmed, up to 15% of the time, making them off task up to 15% of the time, would they be able to get – engage in these jobs at the competitive level?
> A. I believe that would become a problem, as far as employer tolerances go. So, I believe that would be in excess of – of typical tolerance and be unsustainable in a competitive work environment.

*See* Tr. 55–56 (emphasis added).

11

with other conditions—when he determines [the claimant's] RFC.") (internal citation omitted). This is not to say that the ALJ may not reach the same result on remand; however, without the correct application of law and analysis, the Court cannot say that Ms. Zalk-Smith's RFC should not include limitations arising from her CTS impairment.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and **REMANDED** for further proceedings.

**So ORDERED and SIGNED this 30th day of September, 2021.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE